**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DIMAS RODRIGUEZ, on behalf of himself and all other plaintiffs similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 22-cv-04532 |
| v. | ) ) | Honorable Robert W. Gettleman |
| LEGACY HEALTHCARE FINANCIAL SERVICES, LLC; and LAGRANGE SKILLED NURSING FACILITY LLC d/b/a THE GROVE OF LAGRANGE PARK, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS**
**COMBINED MOTION TO DISMISS PURSUANT TO RULES 12(B)(1) AND 12(B)(6)**

Plaintiff Dimas Rodriguez's ("Plaintiff") Response to Defendant Legacy Healthcare Financial Services, LLC's ("Defendant" or "Legacy") Motion to Dismiss the First Amended Complaint (the "Response") cannot escape the fact that Plaintiff has failed to plead sufficient facts establishing that he was ever employed by Defendant Legacy. For this reason, the Amended Complaint should be dismissed pursuant to Rules 12(b)(6) and 12(b)(1).

**I.      THE AMENDED COMPLAINT MUST BE DISMISSED UNDER RULE 12(B)(6)**
**FOR FAILURE TO STATE A CLAIM AGAINST LEGACY.**

A Rule 12(b)(6) motion to dismiss challenges a plaintiff's complaint as failing to sufficiently state a claim on which relief may be granted. Fed. R. Civ. P. 12(b)(6). Generally, in ruling on a Rule 12(b)(6) motion to dismiss, a court limits its inquiry "to the factual allegations contained within the four corners of the complaint." *Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1236 (N.D. Ill. Aug. 29, 2005); *Burke v. 401 N. Wabash Venture, L.L.C.*, 714 F.3d 501, 505 (7th Cir. 2013) ("In general, a court may only consider the plaintiff's complaint when ruling on a Rule 12(b)(6) motion.").

1

Rather than addressing the arguments made in Defendant's Motion, Plaintiff flouts the Federal Rules of Civil Procedure and expressly relies on evidence outside the four corners of the Amended Complaint, namely, evidence obtained through discovery (*see* Resp., pp. 4-6, 8-11, 14) and deposition testimony (*see id*., pp. 4 – 10). As such, Plaintiff's inclusion of evidence outside the Amended Complaint should disregarded for purposes of assessing Defendant's 12(b)(6) motion. *ABN Amro, Inc. v. Capital Int'l Ltd*., 2007 U.S. Dist. LEXIS 19601, at \*45 (N.D. Ill. Mar. 16, 2007) (declining to consider deposition testimony for purposes of Rule 12(b)(6) review and noting that "it is only appropriate to consider the deposition testimony" if the plaintiff "referred to the testimony in its Complaint and the testimony is central to" plaintiff's claims); *In re Alejandre*, 2015 Bankr. LEXIS 4019, at \*5 (Bankr. N.D. Ill. Nov. 23, 2015) (declining to consider new documents incorporated into plaintiff's Response "[s]ince a Rule 12(b)(6) motion deals with the complaint as pleaded").

For the reasons set forth in Defendant's Rule 12(b)(6) motion, the allegations in the Amended Complaint cannot withstand dismissal. *See United States ex rel. Denning Inc. v. Titan Mech., LLC*, 2016 U.S. Dist. LEXIS 84881, at \*5 (N.D. Ill. June 29, 2016) ("when deciding on a Rule 12(b)(6) motion, only the 'four corners of the complaint' may be considered") (quoting Fed. R. Civ. P. 12). Indeed, Plaintiff makes no attempt in his Response to address Defendant's 12(b)(6) motion. For this reason alone, Plaintiff's Amended Complaint must be dismissed.

## II.   THE AMENDED COMPLAINT ALSO MUST BE DISMISSED UNDER RULE 12(B)(1) BECAUSE PLAINTIFF LACKS STANDING TO ASSERT CLAIMS AGAINST LEGACY UNDER THE FLSA OR THE IMWL.

Because Plaintiff has not alleged facts to establish that he was employed by Legacy, he cannot satisfy the requirement to show that he suffered an injury that is "fairly traceable" to the challenged conduct of Legacy. *See Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289

(7th Cir. 2016). Such injury is traceable to, and addressable by, those who employed him. *Id.* Tellingly, after leave of the Court to conduct written discovery and the 30(b)(6) deposition of Kevin McInerney, Legacy's Chief Personnel Officer, Plaintiff cannot point to any facts which establish the requisite employment relationship with, and a resulting injury from, Defendant Legacy. To the contrary, Plaintiff instead relies upon blatant misrepresentations of the record to advance his theory that Defendant Legacy was his employer under either a "single employer" or "joint employer" doctrine. In short, Plaintiff cannot establish that Legacy was his employer. He thus lacks standing to pursue his own claim, much less the speculative claims of a purported class. *Foser v. Ctr. Twp. of LaPorte Cnty.*, 798 F. 2d 237, 244 (7th Cir. 1986) (a plaintiff without standing to assert a claim against the defendant cannot represent a class against that defendant); *Hope, Inc. v. DuPage Cnty.*, 738 F.2d 797, 804 (7th Cir. 1984) ("For any of the individual plaintiffs to continue to litigate on behalf of the class … at least one of them must establish that he or she met the minimum constitutional requirements for standing.").

Plaintiff alleges in his Reply that he has pleaded facts "sufficient to establish an employment relationship" under two theories – single employer liability and joint employer liability. Regardless of Plaintiff's theory of liability, the so-called facts upon which Plaintiff relies fail to show an employment relationship between Plaintiff and Defendant Legacy, and he accordingly may not proceed with his FLSA and/or IMWL claims.

    **A.**    **Plaintiff's Reliance Upon the Single Employer Doctrine Is Misplaced, and in any Event, Plaintiff Cannot Establish an Employment Relationship with Legacy Under the Single Employer Doctrine.**

At the outset, Plaintiff contends that Legacy is his employer because, together, Legacy and LaGrange operate as a "single employer" (Resp., pp. 3-10), rendering them jointly liable for violations of the FLSA. Plaintiff advocates for a four-factor test to determine "whether nominally

separate business entities are a single employer: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." (*Id*. at pp. 3-4 (citing *Trustees of Pension, Welfare & Vacation Fringe Ben. Funds of IBEW Loc. 701 v. Favia Elec. Co.*, 995 F.2d 785, 788 (7th Cir. 1993)).  Notably, the Seventh Circuit has not held that this doctrine can extend to actions brought under the FLSA.[1]  *Bruske v. Capitol Watertown Sprechers, LLC*, 2021 U.S. Dist. LEXIS 256432 (W.D. Wis. May 26, 2021) ("neither the Seventh Circuit nor any district court within the circuit has had occasion to consider whether [the single employer doctrine] should extend to actions brought under the FLSA"); *Amos v. Classic Dining Grp., LLC*, 2021 U.S. Dist. LEXIS 261164, at \*7 (S.D. Ind. Sep. 22, 2021) (noting that plaintiffs "cannot cite a single cause adopting [the single employer theory] in a similar FLSA context"); *Babych v. Psychiatric Sols., Inc.*, 2011 U.S. Dist. LEXIS 130167, at \*22-23 n.5 (N.D. Ill. Nov. 9, 2011) ("The court is aware of no case in this circuit that applies the [single employer] test in analyzing whether an entity is an employer under the FLSA, and indeed the FLSA has its own standard for 'enterprise' coverage.").

Recognizing that the Seventh Circuit generally does not apply the "single employer" test when determining liability under the FLSA, Plaintiff cites to only one case in this circuit that has. (Resp., p. 4.)  Namely, in *Bruske*, the United States District Court for the Western District of Wisconsin found under very different and far more compelling circumstances that the single employer doctrine applied to FLSA actions.  The court noted that "neither the Seventh Circuit nor any district court within the circuit" had so held until then, but pointed to the Seventh Circuit's application of the single employer doctrine in the ERISA context.  *Bruske*, 2021 U.S. Dist. LEXIS

---

[1]    Plaintiff alleges in his Response that Defendant has "forfeited any argument regarding standing under the single employer doctrine" because it did not raise the argument in its Motion.  (Resp. pp. 10-11).  Such notion is preposterous, where Defendant had no reason to raise the single employer doctrine where it has not been applied in this Circuit in the context of an FLSA suit, and Plaintiff nonetheless raises it in his Response.

256432, at *8-9.  The *Bruske* court found that plaintiffs alleged sufficient facts to support the

addition of new defendants under this theory, where the amended complaint alleged specific facts

to support "the interrelationship of operations, common management, centralized control of labor

relations, and common ownership of the LLCs," and that this common control was used to violate

federal and state wage and hour laws, causing plaintiff's injury.  *Id*. at *10.  The *Bruske* complaint

alleged the failure to pay overtime (unlike this case, which alleges the misclassification of Plaintiff

as an exempt employee), and the plaintiff provided far more detailed factual allegations than in

Plaintiff's Amended Complaint.  The *Bruske* complaint alleged specific facts as to how all three

(3) defendants were "owned in whole or in part" by the same individual, who was "ultimately

responsible for making *all* business decisions" such as hiring, firing, implementing discipline, and

delegating authority.  *See Bruske*, 2021 U.S. Dist. LEXIS 256432 [Dkt. 85, at ¶¶ 27, 29].

Moreover, the three defendants shared the same corporate address, registered agent, and Director

of Operations, who ultimately was responsible for "maintaining relevant records, processing

payrolls, and hiring and firing managers and/or employees," and "kept monies in and made

payments out of a single bank account."  *Id*. [Dkt. 85, at ¶¶ 27-30].  Even if *Bruske* was binding

on this Court (and it is not), the Amended Complaint does not plead sufficient facts to prove the

existence of an employment relationship with Legacy.

    **1.**  **Plaintiff Does Not Plead Facts Sufficient to Show That Legacy and LaGrange are Interrelated Such That They Constitute a Single Employer.**

  "[W]hen assessing the interrelatedness of two companies' operations, 'day-to-day

operational matters' carry the most weight."  *Laborers' Pension Fund v. Total Home Restoration*

*1*, 2022 U.S. Dist. LEXIS 160174, at *25-26 (N.D. Ill. Sep. 6, 2022).  Courts consider "whether

purportedly separate businesses shared the maintenance of their business records, processed

payroll jointly, processed their billing and bank accounts together, and shared space." *Chi. Reg'l Council of Carpenters Pension Fund v. TMG Corp.*, 206 F. Supp. 3d 1351, 1357 (N.D. Ill. 2016).

Plaintiff simply cannot demonstrate that Legacy and LaGrange are interrelated in their day-to-day operational matters. Plaintiff has not alleged and cannot show (even after limited discovery regarding the employer issue) that Legacy and LaGrange shared the maintenance of their business records – in fact, Plaintiff concedes that "LaGrange *keeps* employment records that are reviewed by Legacy." (Resp., p. 5 (emphasis added).) Nor can Plaintiff show that Legacy and LaGrange processed payroll jointly or held bank accounts together. In fact, Plaintiff does not make a single allegation regarding shared payroll or bank accounts, as the two entities process payroll separately and hold separate bank accounts. Moreover, Plaintiff cannot show that Legacy and LaGrange share a space – it is indisputable that LaGrange operates out of a facility that is completely separate from Legacy. Plaintiff instead attempts to show "interrelation" of operations by misquoting or misrepresenting the deposition testimony of Legacy representative Kevin McInerney, none of which are sufficient to show "sufficient" relation of operations. Plaintiff's Response is replete with such examples.

For instance, Plaintiff asserts that McInerney testified that "LaGrange operates under Legacy's 'The Grove' brand." (Resp., p. 4.) An examination of the transcript page cited reveals that McInerney testified that LaGrange (Plaintiff's employer) was "a brand of facilities," not a Legacy brand. (*Id.*, Ex. 1, p. 109, ln. 1-5). He stated that the facilities are managed by Legacy, but it is undisputed that Defendant LaGrange is subject to a Management Service Agreement in which Defendant "Legacy provides consulting and back office support for health care facilities." (*Id.*, Ex. 1, p. 17, ln. 13-15, p. 24, ln. 2-10.) Legacy has such management services agreements with approximately 70 facilities, according to McInerney (*id.*, Ex. 1, p. 24, ln. 2-12), beyond the

6

"five" or so facilities under "The Grove" brand of facilities (*id.,* Ex. 1, p. 109, ln. 16-19). McInerney, moreover, did not testify that "Legacy recruiters post open positions for facilities" as Plaintiff alleges; to the contrary, he testified that "they could," but "generally speaking the facilities are responsible for their open positions and would be posting those ads." (*Id.*, Ex. 1, p. 54, ln. 10-15.) The facilities, moreover, did not post directly to Legacy's website, but did so using a third-party software platform called "Apploi." (*Id.*, Ex. 1, p. 55, ln. 15-5).

Plaintiff also makes a sweeping claim that "Legacy develops and implements LaGrange's employment policies and practices," but an examination of Plaintiff's transcript cite references only Legacy's role in assisting LaGrange with "onboarding documents." (*Id.*, Ex. 1, p. 38, ln 19-24). Plaintiff's broad statement that "Legacy also tells LaGrange and other facility employees that they are Legacy employees" is based on an e-mail chain introduced in an unrelated, prior litigation matter in which Legacy made a single reference thanking employees for choosing to work "at Legacy," in conjunction with the introduction of a single Covid-related bonus during the pandemic – hardly evidence of "day-to-day" control. (*Id.*, p. 5.)

The same can be said for nearly every other "fact" cited from the McInerney deposition transcript evidencing "day-to-day" control. Plaintiff claims that Legacy created and implemented a "Clinical Capabilities Grid *for Plaintiff to use during admissions.*" (*Id.*, p. 5 (emphasis added).) Plaintiff's statement is false, where an examination of the testimony reveals that Legacy created the Clinical Capabilities Grid "as an internal document" to be completed by the facility not for use during admissions, but rather to determine whether the facility had the ability to meet the health needs of certain patients. (*Id.*, Ex. 1, p. 113-114). Equally troubling is Plaintiff's statement that "Legacy's corporate representative testified that the intent of the agreement was that LaGrange is supposed to follow any of the policies created and implemented by Legacy." (*Id.*, p. 6). The

transcript cite reveals this statement is both taken out of context and simply not accurate. The question to McInerney related specifically to Defendant LaGrange's own responsibility for "quality improvement and for all aspects of compliance with all health care and general rules and regulations governing the delivery of health care services," and quotes from a section of the Management Services Agreement relating to Defendant LaGrange's "Duties and Operations." (*Id.,* Ex. 1, p. 165-166.) Notably, Plaintiff ignores the language which precedes this section, in which the parties to the agreement make it clear that Defendant LaGrange

> is, and at all times during the Term hereof shall remain, the licensed operator of the Facility, and shall remain solely and exclusively responsible for the day-to-day operations of the Facility, including, without limitation: (i) management and supervision of the Facility's employees and staff; (ii) delivery and provision of care to residents; (iii) setting or implementing staffing patterns; (iv) delivery of clinical training, education, care, supervision and/or direction to staff; (v) determination of the Facility's budget; (vi) setting or implementing any functions relating to the operation of the Facility,…, and or (vii) maintenance of the physical plant, equipment, capital assets and/or grounds located at the Facility.

(*Id*., Ex. 6, p. 3, ¶ 2(a).) Plaintiff also ignores testimony from McInerney in which he testifies, without rebuttal or contradiction, that Defendant LaGrange retains the discretion to make hiring, discipline, terminations and resolutions of disputes with facility employees on its own. (*Id.*, Ex. 1, p. 149.) McInerney further testified that while Legacy may develop practices with respect to certain employment practices, Defendant LaGrange retained the right to change its policies with respect to hiring, training, orientation, supervision, promotion, compensation, discipline, and termination, without any approval from Defendant Legacy. (*Id.,* Ex. 1, p. 150.) Indeed, a close examination of the "evidence" cited by Plaintiff fails to demonstrate that Defendant Legacy had control over the "day-to-day" operations of Defendant LaGrange.

### 2. Plaintiff Does Not Demonstrate Common Management or Centralized Control of Labor Relations Because Legacy Does Not Exercise Actual or Active Control Over LaGrange's Day-to-Day Operations.

Equally unavailing are Plaintiff's arguments with respect to "common management." The "common management" and "centralized control over labor relations" facts are closely related. *Chi. Reg'l Council of Carpenters Pension Fund v. United Carpet, Inc.*, 2020 U.S. Dist. LEXIS 101345, at *24 (N.D. Ill. June 10, 2020). In determining whether multiple entities have common management, a court must determine whether the two companies exercise "actual or active control, as distinguished from potential control, over the other's day-to-day operations," *Lippert Tile Co. v. Int'l Union of Bricklayers & Allied Craftsmen, Dist. Council of Wis. & Its Local 5*, 724 F.3d 939, 947 (7th Cir. 2013), with an emphasis on "common control over hiring and firing of employees, as well as other daily management decisions." *Auto. Mechanics' Local No. 701 Union and Indus. Pension Fund v. Dynamic Garage, Inc*., 2018 U.S. Dist. LEXIS 168571, at *6 (N.D. Ill. Sept. 30, 2018). Similarly, centralized control of labor relations considers "who is responsible for hiring, firing, and evaluating employees." *Bd. of Trs. of The Pipe Fitters Ret. Fund, Local 597 v. Am. Weathermakers, Inc*., 150 F. Supp. 3d 897, 907 (N.D. Ill. 2015).

While Plaintiff cites to a number of facts which suggest that Legacy had potential control over LaGrange's day-to-day operations, nowhere in the Amended Complaint or Response does Plaintiff allege (nor can he, in good faith), that Legacy exercised "actual or active control … over [LaGrange's] day-to-day operations." *Lippert*, 724 F.3d at 947. Instead, Plaintiff relies on misrepresented sections of McInerney's deposition transcript relating to the Management Services Agreement for the proposition that "Legacy develops and implements hiring, training, supervision, promotion, compensation, discipline, and termination practices of LaGrange staff, as well as providing payroll functions, serving as paymaster, and making payroll payments on behalf of

LaGrange." (Resp., p. 6.) The existence of this agreement alone, Plaintiff argues, shows "common management between Legacy and LaGrange." (*Id.*, p. 7.) Here too, Plaintiff ignores that McInerney confirmed during his deposition that, while Legacy advises LaGrange on hiring, discipline, termination, and resolutions of disputes with LaGrange employees, LaGrange holds the ultimate responsibility for those decisions. As explained in greater detail above, LaGrange: (i) makes the ultimate hiring decisions and conducts formal interviews for its staff; (ii) has the ultimate authority regarding the care of its patients; (iii) maintains its own payroll records and provides such records to a third-party, which processes payroll; and (iv) maintains personnel files for its staff. (*Id.*, Ex. 1, p. 99 ln. 15; p. 150 ln. 24 – p. 151 ln. 1-12; p. 154 ln. 10-24 – p. 155 ln. 1-18; p. 160 ln. 9-13.)

Nor do Plaintiff's allegations that "Legacy itself manages LaGrange according to the Illinois Secretary of State LLC File Detail Report" and that "LaGrange submitted cost reports to the State of Illinois naming Legacy as a 'Home office' and reported Legacy was a 'central office or parent company' of LaGrange" (*id.*, p. 6) support even an inference of "actual or active control." Rather, Plaintiff simply alleges the existence of a business relationship between Legacy and LaGrange, which is not enough to establish actual or active control. (*Id.*, p. 6.) Indeed, an examination of the cost report filed with the State of Illinois establishes that Legacy is not listed as the "central office" or "parent organization," on the form itself but rather as a "related organization," along with a dozen other independent business entities. (*Id.*, Ex. 10.)

Finally, each and every "fact" cited in Plaintiff's bullet-list summary of Legacy's purported duties under the Management Services Agreement is inaccurate, misrepresents the actual agreement, or is inconsistent with the specific pages of the McInerney transcript cited in support of the "fact." Simply asking a question to confirm the existence of an alleged fact, does not make

10

a fact when the response suggests otherwise.  A review of the actual provisions of the agreement describing these listed functions, including the sections described above, confirms this.  Contrary to his assertions otherwise, Plaintiff has not plausibly alleged common management between Defendant Legacy and LaGrange.

Thus, because Plaintiff cannot establish that Legacy exercises actual or active control over LaGrange's day-to-day operations, Plaintiff cannot establish that Legacy and LaGrange have common management or centralized control of labor relations.  *Cf. Lippert*, 724 F.3d at 947 (finding that plaintiff sufficiently plead "common management" factor where the same entity "maintain[ed] business records, processe[d] payroll, handle[d] billing, and manage[d] bank accounts" for the other defendants).

### 3. Plaintiff Cannot Establish Common Ownership, as Legacy and LaGrange are Not Owned by the Same Individuals.

"Common ownership typically applies when two companies are owned by the same individual(s)."  *United Carpet*, 2020 U.S. Dist. LEXIS 101345, at *3.  Such is not the case here. Legacy is owned by Menachem Shabat and Chaim Rajchenbach [Dkt. 15], while LaGrange is owned by the GPN Family Trust and the Doros Generation Trust [Dkt. 16].  Plaintiff cites to no evidence which would plausibly suggest that Legacy and LaGrange are owned by the same individuals, nor should his purely speculative statement that "[w]hile it is unknown at this time who the beneficiaries of the trusts [which own LaGrange] are," that "Shabat has ownership interests in Legacy-managed facilities" be given any weight, where there is no reference to whether Shabat has ownership interest in Defendant LaGrange.  (Resp., pp. 8-9.)

### B. Plaintiff Does Not Sufficiently Allege Joint Employer Liability.

"[T]he Seventh Circuit has emphasized that 'for a joint employer relationship to exist, each alleged employer must *exercise control* over the working conditions of the employee.'"  *Ivery v.*

11

*RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1128 (N.D. Ill. Dec. 8, 2017) (emphasis added) (citing *Moldenhauer v. Tazewell–Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 644 (7th Cir 2008)). "A joint employer relationship does not lie" where a complaint "is devoid of any facts alleging [the defendant] controlled [plaintiff's] work conditions, assignments, evaluations, or performance." *Shah v. Littelfuse Inc.*, 2013 U.S. Dist. LEXIS 61081, at *9 (N.D. Ill. Apr. 29, 2013). Nowhere in the Amended Complaint does Plaintiff allege that he actually performed work for Legacy, that Legacy controlled his working conditions, had the authority to hire or fire him, or had the authority to set his work schedule or supervise his day-to-day work. *Richardson v. Help at Home, LLC*, 2017 U.S. Dist. LEXIS 73334, at *3 (N.D. Ill. May 15, 2017) ("The test for joint employer liability is to look at all facts surrounding the defendant's supervision of the employee and determine whether the defendant exercised control and authority over the employee *in a manner that caused the FLSA violation….*") (emphasis added); *Moldenhauer*, 536 F.3d at 643 ("for a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee"); *Gross v. Peoples Gas Light & Coke Co.*, 2018 U.S. Dist. LEXIS 10985, *11-12 (N.D. Ill. Jan. 24, 2018) (dismissing defendant based on plaintiff's theory of joint employer liability because plaintiff stated in conclusory terms that defendant was his joint employer).

Despite Plaintiff's concession that he "physically worked at the LaGrange facility," he maintains that Legacy "indisputably exercised control over [his] employment." (Resp., p. 11.) To support his assertion that "Legacy had authority and actually did implement the unlawful practices at LaGrange and other facilities," Plaintiff points to four specific, non-conclusory facts: (1) he was "first interviewed by Legacy's Director of Marketing," (2) "Legacy recruits employees to work at its managed facilities," (3) Legacy was a party to a Management Services Agreement with

LaGrange, wherein Legacy was contracted to "develop and implement … policies and practices for employee hiring, orientation, training, promotion, compensation, and termination," and (4) Legacy "implement[ed] bonus programs for all of its facilities, including LaGrange." (*Id*., pp. 10-11.) However, Plaintiff fails to link these facts to his own employment. Specifically, Plaintiff does not allege: (1) that Legacy made the ultimate decision to extend a job offer to Plaintiff or that a Legacy employee informed him of the offer, (2) that he was personally recruited by Legacy to work at LaGrange, (3) that Legacy was in charge of his orientation or training, made the sole decision to promote Plaintiff, or increased or decreased his compensation, or (4) that Legacy was solely responsible for bonuses.

While McInerney indeed testified that it would not "surprise him" if Legacy Director of Marketing Eric Iverson interviewed plaintiff, he explained that "candidates come from just about everywhere and there are a number of avenues for getting those candidates to the facility for an interview and potential hiring." (*Id.*, Ex. 1, p. 154, ln. 19-22.) He further explained that "if Eric had a conversation or an interview with [Plaintiff], prior to the administrator to the facility, it wouldn't have surprised me. But ultimately, the hiring decision and the formal interview would have taken place by the administrator. And, that decision would have been made by the administrator." (*Id.*, Ex. 1, p. 154-155.) McInerney testified that a hiring decision would entail an interview between the applicant and LaGrange's administrator, Hilda Derzsy, who in fact interviewed Plaintiff. (*Id*.)

Further, as discussed above, while the Management Services Agreement describes as a part of Defendant Legacy's duties certain "Human Resources Services" relating to the development and implementation of certain *practices* (not policies, an additional term which Plaintiff gratuitously repeats throughout his Response), the same agreement specifically states that

ultimately, it is Defendant LaGrange that is the "licensed operator of the facility," which "at all times…shall remain solely and exclusively responsible for the day-to-day operations of the Facility," which includes management and supervision of the employees and staff, and a number of other duties as addressed above, and to which McInerney testified without contradiction.

Finally, the simple allegation of Legacy's role in implementing a single Covid bonus program at some point in the past, introduced through an e-mail not involving the misclassification issue at hand in this case, without any indication that this bonus applied to Plaintiff as an exempt employee, hardly demonstrates that Legacy was Plaintiff's employer. Notably missing from any of Plaintiff's allegations and so-called facts is any reference to Defendant Legacy's role in classifying Plaintiff as an exempt employee, the sole issue presented in this matter.

At most, Plaintiff's allegations only amount to specific instances of Defendant Legacy's activities in furtherance of its consulting agreement with Defendant LaGrange, and there is no indication or allegation that the parties entered into the agreement through anything other than an arm's length transaction. In short, this is not enough. *See Moldenhauer*, 536 F.3d at 645 (noting that the fact that one defendant contracted with the other "for the provision of [payroll and insurance] services … is insufficient to establish a joint-employment relationship"); *Clifford v. Patterson Cos., Inc.*, 2009 U.S. Dist. LEXIS 107635 (N.D. Ill. Nov. 18, 2009) (no joint employer relationship where defendant did not "exercise[] any control over [plaintiff's] daily activities or workload," despite the fact that defendant issued plaintiff's paychecks, awarded him company stock, referred to him as an employee in the stock agreement, invited him to participate in a company plan, and advised him of confidentiality obligations).

The Amended Complaint fails to state a viable claim with respect to Legacy as it contains no specific allegations demonstrating Plaintiff's employment relationship with Legacy.

14

Accordingly, the Amended Complaint fails to state viable claims as to Legacy under the FLSA or the IMWL and must be dismissed pursuant to Section 12(b)(1) as well.

## III.    CONCLUSION

For the foregoing reasons, Defendant Legacy Healthcare Financial Services, LLC respectfully requests that this Court dismiss Plaintiff's Amended Class and Collective Action Complaint with prejudice because: (1) pursuant to Rule 12(b)(6), Plaintiff has not and cannot sufficiently plead that Legacy was his employer, and (2) pursuant to Rule 12(b)(1), Plaintiff has not and cannot sufficiently plead an injury fairly traceable to the conduct of Legacy and thus lacks standing to maintain his FLSA and IMWL claims.

Dated: May 8, 2023

Respectfully submitted,

**LEGACY HEALTHCARE FINANCIAL SERVICES, LLC**

By:    */s/ Jason C. Kim*
          One of Its Attorneys

Jason C. Kim
*jkim@nge.com*
Alexis M. Dominguez
*adominguez@nge.com*
Kathleen Okon
*kokon@nge.com*
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Suite 1700
Chicago, IL 60602-3801
(312) 269-8000

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on May 8, 2023, he caused the foregoing document to be electronically filed with the Clerk of Court using CM/ECF, which sent notification of such filing to all counsel of record.

/s/ Alexis M. Dominguez
Alexis M. Dominguez

35201061.2