IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DIMAS RODRIGUEZ, on behalf of himself and all other plaintiffs similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 22 CV 04532 |
| v. | ) ) | Judge Robert W. Gettleman |
| LEGACY HEALTHCARE FINANCIAL SERVICES, LLC; and LAGRANGE SKILLED NURSING FACILITY, LLC d/b/a THE GROVE | ) ) ) ) ) | |
| Defendant. | ) ) | |

## <u>MEMORANDUM OPINION & ORDER</u>

Plaintiff Dimas Rodriguez, on behalf of himself and all others similarly situated, brings this two-count amended class and collective action complaint against defendants Legacy Healthcare Financial Services, LLC ("Legacy") and LaGrange Skilled Nursing Facility, LLC, d/b/a/ "The Grove of LaGrange Park" ("LaGrange") (collectively, "defendants"). Count I alleges that both defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216, and Count II alleges that both defendants violated the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1. On December 20, 2022, defendant Legacy moved to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction and Rule 12(b)(6) for failure to state a claim (Doc. 25). On January 3, 2023, the court granted leave to conduct limited discovery related to the issues raised in Legacy's motion pursuant to Rule 12(b)(1), and discovery closed on March 24, 2023. For the reasons discussed below, the court grants Legacy's motion to dismiss plaintiff's claims against it (Doc. 25).

1

## **BACKGROUND**

LaGrange is a skilled nursing facility that provides residential health care services, and, according to plaintiff, Legacy manages the day-to-day operations at LaGrange, including hiring, training, supervision, and payroll decisions. Plaintiff alleges that he, and other similarly situated current and former employees, was an admission director, which is a salaried employee "for both Defendants" that filters referrals for appropriate clients at various assisted living and rehabilitation facilities. According to plaintiff, admission directors are not paid overtime compensation when they work more than 40 hours per work week, because defendants classify the position as "administrative," which exempts it from overtime pay. Plaintiff alleges that admission directors are misclassified, and should receive overtime under the FLSA and IMLW at one and one-half times their regular rates of pay.

In his amended complaint, plaintiff alleges that he was hired to work at LaGrange, and LaGrange is a facility that has a management services agreement with Legacy. According to plaintiff, Legacy has management services agreements with over 60 facilities, wherein Legacy "performs services such as developing and implementing hiring, training, supervision, promotion, compensation, discipline, and termination practices of facility staff." In addition, plaintiff alleges that Legacy provides payroll functions and payments on behalf of its facilities, and LaGrange reported Legacy as the "home office" in cost reports for the state of Illinois, as well as the "central office or parent organization." According to plaintiff, both LaGrange and Legacy controlled his working conditions, and both defendants are an "employer" as defined in the FLSA and IMWL.

Plaintiff elaborates on his relationship with both defendants during the hiring process. For example, he alleges that prospective employees can find employment listings for any facility

managed by Legacy on its website through its "Careers at Legacy" page. Further, plaintiff alleges that his hiring paperwork referenced both Legacy and LaGrange, because the "employee's start-up sheet" displayed LaGrange's letterhead, and his W-4 listed LaGrange in the employer-completed section. On the other hand, plaintiff's "acknowledgement of biometric policy and consent form" was with Legacy, and this form referred to plaintiff as an "employee."

Plaintiff did not attach LaGrange's management services agreement with Legacy to his amended complaint, but plaintiff relies on the terms of the instant motion agreement in his allegations, and the parties produced the agreement during jurisdictional discovery, in addition to referencing it while briefing the instant motion.[1] Plaintiff emphasizes that, under the management services agreement, Legacy provides administrative services that are "necessary and appropriate for the day-to-day administration and management of the Facility." The agreement provides, however, that LaGrange is "solely and exclusively responsible for the day-to-day operations of the Facility," including, among other things: management and supervision of LaGrange's employees and staff; setting or implementing staffing patterns; and setting or implementing any functions relating to the operation of the facility. Legacy is responsible for business services, human resources, financial services, and marketing, in addition to coordination of services for legal issues, compliance, and quality assurance.

Moreover, plaintiff deposed Kevin McInerney ("McInerney"), the chief personnel officer at Legacy, pursuant to Federal Rule of Civil Procedure 30(b)(6), and Legacy produced McInerney's affidavit. In his affidavit, McInerney states that "there is no record of Legacy ever having hired Plaintiff, paid any wages to Plaintiff, supervised Plaintiff's work, or maintained

---

[1] The court may consider the management services agreement because courts may consider documents that plaintiffs refer to in their complaint and that are central to their claims. See Geinosky v. City of Chicago, 675 F.3d 743, 746 n. 1 (7th Cir. 2012).

Plaintiff's employment records." In his testimony, McInerney emphasized that Legacy "provided guidance on general guidelines and policies with regard to patient care and assistance," as well as "assistance to the facility in certain regulatory compliance areas." Beyond McInerney's testimony, the parties produced Legacy's affiliation notice, which states that Legacy is owned by Menachem Shabat and Chaim Rajchenbach, whereas LaGrange filed in its notice that it is owned by two trusts, although McInerney acknowledged that Menachem Shabat may have ownership interests in some unnamed Legacy-managed facilities. In cost reports that LaGrange filed with the state of Illinois, Legacy is listed as a "related organization," along with "a dozen other independent entities."

According to plaintiff, McInerney's deposition testimony demonstrates that Legacy's regional directors of operations are responsible for the operations in Legacy-managed facilities. Plaintiff emphasizes that Legacy's director of marketing initially interviewed plaintiff before a LaGrange administrator interviewed him. Further, Legacy can access LaGrange's personnel records, and LaGrange employees can join Legacy's 401(k) plan and access Legacy's employment assistance program, in addition to Legacy's COVID-19 bonus program, which included a supplemental wage scale "for ALL employees working in the facilities." (Emphasis in original exhibit). Plaintiff concludes that "[t]he affidavit of Kevin McInerney does not rebut these allegations."

## DISCUSSION

In its motion to dismiss, defendant Legacy argues that Counts I and II should be dismissed against it because plaintiff has not plausibly alleged that Legacy was his employer, and the FLSA and the IMWL apply only to "employees" of "employers." 29 U.S.C. §207(a); 820 ILCS 105/4. The court's analysis into whether Legacy was an "employer" is the same under

both statutes.  See, e.g., Boyce v. SSP America MDW, LLC, No. 19 C 2157, 2019 WL 3554153, at *2 (N.D. Ill. July 31, 2019).  According to Legacy, the court should dismiss the claims against it pursuant to Federal Rules 12(b)(6) for failure to state a claim and 12(b)(1) for lack of jurisdiction.

In this case, the court's examination of its jurisdiction blends into its analysis of the factual sufficiency of plaintiff's amended complaint, because Legacy's arguments for both challenges depend on the same underlying determination: whether plaintiff has alleged sufficient facts to demonstrate an employment relationship between plaintiff and Legacy.  According to Legacy, plaintiff does not offer evidence to suggest that Legacy was plaintiff's employer.  Rather, Legacy argues that the facts suggest, at most, a business relationship between Legacy and LaGrange, not an employment relationship between Legacy and plaintiff.  Importantly, in the instant motion, defendants do not dispute that LaGrange was plaintiff's employer.

Generally, courts determine jurisdiction based on the face of the complaint.  See United Phosphorus Ltd. v. Angus Chem. Co., 322 F.3d 942, 946 (7th Cir. 2003), overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc., 683 F.3d 845 (7th Cir. 2012).  Subject matter jurisdiction is a court's authority to hear cases of a particular type, including a plaintiff's ability to establish standing.  Dismissal under Rule 12(b)(1) is appropriate when a plaintiff cannot establish standing to sue.  See The American Fed'n of Gov't Employees, Local 2119 v. Cohen, 171 F.3d 460, 465 (7th Cir. 1999).  To establish standing in federal court, a plaintiff must allege an injury in fact, which must be concrete and particularized, as well as actual or imminent.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992).  The alleged injury must be fairly traceable to the defendant's challenged conduct, and plaintiff must establish a likelihood that the injury will be redressed by a favorable decision.  See id.

If jurisdiction is not evident on the face of the complaint, the court evaluates the defendant's 12(b)(1) motion "as any other motion to dismiss, by assuming for the purposes of the motion that the allegations in the complaint are true." United Phosphorus, 322 F.3d at 946. To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

On the other hand, if the complaint is "formally sufficient but the contention is that there is in fact no subject matter jurisdiction," then the court can consider "affidavits and other material" that support the motion. United Phosphorus, 322 F.3d at 946 (emphasis in original). To avoid dismissal, a plaintiff must support his assertion of subject matter jurisdiction with "competent proof" that establishes the jurisdictional facts by a preponderance of the evidence. See McMillian v. Sheraton Chi. Hotel & Towers, 567 F.3d 839, 844 (7th Cir. 2009).

The court begins by evaluating Legacy's argument for dismissal pursuant to Rule 12(b)(1) for lack of jurisdiction as a matter of fact. In evaluating this contention, the court's analysis is not limited to the four corners of the complaint, and, consequently, it considers McInerney's deposition testimony and other evidence from jurisdictional discovery.

According to Legacy, plaintiff does not allege facts to establish that Legacy was his employer. Specifically, Legacy argues that plaintiff does not establish that Legacy controlled his working environment by exercising control over his work activities, his hiring and termination, or his work schedule and day-to-day supervision. In fact, according to Legacy, the express language of its management service agreement with LaGrange contradicts plaintiff's allegations,

Case: 1:22-cv-04532 Document #: 39 Filed: 06/07/23 Page 7 of 9 PageID #:371

where it provides that LaGrange is "solely and exclusively responsible for the day-to-day operations of the Facility," including: management and supervision of LaGrange's employees and staff; setting or implementing staffing patterns; and setting or implementing any functions relating to the operation of the facility, among other things. Legacy maintains that it offers merely "back-end administrative and consulting services to separately owned and operated skilled nursing facilities."

The Seventh Circuit has evaluated how to determine whether an individual or entity is an "employer" as contemplated by the FLSA and IMWL.[2] In the Seventh Circuit, courts examine the economic reality of the working relationship, which requires an evaluation of the totality of the circumstances. See Hollins v. Regency Corp., 867 F.3d 830, 835 (7th Cir. 2017). The economic reality of a working relationship includes, but is not limited to, whether the defendant: had the power to hire and fire the employee; supervised and controlled the employee's work schedule or conditions of employment; determined the rate and method of payment; and maintained employment records. See Moldenhauer v. Tazewell-Pekin Consol. Commc'ns Ctr., 536 F.3d 640, 644 (7th Cir. 2008).

In this case, the court agrees with Legacy that plaintiff has not established sufficient evidence to suggest an employment relationship between himself and Legacy. While plaintiff asserts that Legacy "manages the day to day operations of LaGrange, including hiring, training,

---

[2] The court notes that the parties, and case law, frames the "employer" question as a "statutory standing inquiry," with alleged employees' injuries traceable only to, and redressable by, those who employed them. See, e.g., Berger v. Nat'l Collegiate Athletic Ass'n, 843 F.3d 285, 289 (7th Cir. 2016) (citing Roman v. Guapos III, Inc., 970 F. Supp. 2d 407, 412 (D. Md. 2013)). The Supreme Court, however, suggested in Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014), that "prudential standing" or "statutory standing" questions are better characterized as statutory interpretation issues, when the issue is whether the plaintiff falls within the class of plaintiffs that Congress authorized to sue under the statute. Id. at 125–128. In other words, the proper inquiry is not so much whether plaintiff has statutory standing under Article III as an individual within the zone of interests contemplated by the FLMA and IMWL (i.e., "employees" of "employers"). Rather, the inquiry is whether he has a statutory cause of action against Legacy. The court still proceeds under Rule 12(b)(1) because the parties' Rules 12(b)(1) and 12(b)(6) arguments depend on the same allegations using the same standard.

supervision, and payroll," this allegation is inconsistent with plaintiff's own reliance on LaGrange's management services agreement with Legacy, which contradicts his allegation. The express language of the agreement provides that LaGrange is "solely and exclusively responsible for the day-to-day operations of the Facility."

The court is not persuaded by plaintiff's counterarguments. It is true, as plaintiff argues, that employees may have multiple employers at one time. See Falk v. Brennan, 414 U.S. 190, 195 (1973). It is also true that the Seventh Circuit has recognized both single and joint employer doctrines to evaluate whether nominally separate business entities are an "employer," in certain contexts.[3] See Trustees of Pension, Welfare & Vacation Fringe Ben. Funds of IBEW Loc. 701 v. Favia Elec. Co., 995 F.2d 785, 788 (7th Cir. 1993); Karr v. Strong Detective Agency, Inc., 787 F.3d 1205, 1208 (7th Cir. 1986). Not only does Legacy's management services agreement with LaGrange contradict plaintiff's core allegation that Legacy is an "employer" under either doctrine, but plaintiff's assertions otherwise are conclusory, and fail to establish that Legacy exercises control over the relevant day-to-day activities at LaGrange.

Court-authorized jurisdictional discovery did not result in evidence that establish an employment relationship between LaGrange and Legacy as an economic reality. Plaintiff argues that Legacy's website offers job listings for employment at LaGrange and other Legacy-managed facilities, but this fact does not change the result, because McInerney testified that "generally speaking the facilities are responsible for their open positions and would be posting those ads." Neither does plaintiff's emphasis on Legacy's biometric policy and consent form, COVID-19 bonus program, or 401(k) program change the court's conclusion, because the court agrees with

---

[3] The Seventh Circuit has not held that the single employer doctrine extends to actions brought under the FLSA. See Bruske v. Capitol Watertown Sprechers, LLC, No. 19-cv-851-wmc, 2021 WL 7502269, at *3 (W.D. Wis. May 26, 2021).

Legacy that these facts are offset by other facts. For example, LaGrange is the employer listed on plaintiff's W-4, not Legacy, and there is no evidence to suggest that LaGrange and Legacy have the same owners, jointly process payroll, or share bank accounts or other assets.

Moreover, plaintiff has not established facts to suggest that Legacy controls payroll, hiring, or termination decisions at Legacy. While it is undisputed that Legacy can review employment records, McInerney testified that LaGrange has discretion in hiring, discipline, termination, and dispute resolution with facility employees. The parties' management services agreement provides that Legacy may "develop and implement" practices for LaGrange, but the evidence does not demonstrate that Legacy maintained actual or active control over LaGrange's "day-to-day" operations, especially policies that are relevant to classifying plaintiff's position as an admission director. Accordingly, the court dismisses Counts I and II against Legacy pursuant to Rule 12(b)(1) for lack of jurisdiction.

## CONCLUSION

For the reasons set forth above, the court grants defendant Legacy's motion to dismiss Counts I and II against it in plaintiff's amended complaint (Doc. 25), without prejudice. Plaintiff's claims against defendant LaGrange remain. The remaining parties are directed to file a joint status report on or before June 28, 2023, using this court's form.

ENTER:

**Robert W. Gettleman**
**United States District Judge**

DATE: June 7, 2023

9